# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 05-30044-01** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **MONICA D. TATUM  MCWILLIAMS** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the district court, is a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 filed by petitioner Monica D. Tatum McWilliams.  For reasons stated below, it is recommended that the motion be **DENIED**.

## BACKGROUND

Petitioner was convicted of forty-seven counts related to a fraudulent scheme to obtain federal money for a daycare center she ran in Monroe, Louisiana from 1998 through 2004. *United States of America v. McWilliams*, 308 Fed.Appx. 806, 807 (5th Cir. 2009).  Petitioner was also held responsible for $617,057.17 in actual losses, and sentenced to eighty-seven months of imprisonment.  *Id.*  Petitioner timely filed the instant motion on April 16, 2010.  [Doc. # 147.]

The Indictment against petitioner and her co-defendant Katherine George was filed in the Western District of Louisiana on December 14, 2005.  [Doc. # 1.]  The Indictment charged that beginning in or about February 2001, and continuing until on or about April 8, 2004, petitioner and the co-defendant devised a scheme to defraud for obtaining money and property by means of deliberate false pretenses, representation and promises.  *Id.*  Specifically, petitioner and the co-defendant were accused of causing fraudulent invoices to be submitted for payment to the Child Care Assistance Program ("CCAP").  *Id.*  CCAP is funded by a U.S. Department of Health and Human Services block grant and administered by the Louisiana Department of Social Services, Office of Family Support.  *Id.*  The fraudulent claims were paid by check from the agency and sent to the daycare center, Kiddieland Daycare Center and Nursery, via the United States Postal Service.  *Id.*

Petitioner was arrested and had her initial appearance on December 20, 2005. [Doc. # 9.] On December 27, 2005, petitioner was arraigned; petitioner had retained Attorney Kevin H. Johnson as her counsel. [Doc. # 16.] As Mr. Johnson was unable to be present during the arraignment, petitioner waived his presence. *Id.* Petitioner pled not guilty to each count of the Indictment. *Id.* Petitioner's counsel filed discovery motions on January 5, 2006 [Doc. #'s 22 and 23], and on January 23, 2006, the motions were granted in part and denied in part. Discovery was provided to defense counsel prior to a February 2, 2006, status conference. On that same day, trial was set for June 19, 2006. [Electronic minutes and scheduling order dated 02/02/2006]. Mr. Johnson thereafter was granted a motion to withdraw as counsel on March 29, 2006. [Doc. # 37.] In the attachments to his motion to withdraw, Mr. Johnson attached a copy of the letter he sent to Petitioner setting out her options and noting that he was forwarding all discovery received from the government to her. [Doc. # 36, attachment 1]

On April 12, 2006, the undersigned ordered petitioner to obtain new counsel of record, or inform the court that she intended to represent herself, on or before April 26, 2006. [Doc. # 40.] Petitioner was provided with information on how to obtain court-appointed counsel. *Id.* Petitioner failed to comply with the order, and the undersigned issued a Show Cause order on April 27, 2006, ordering Petitioner to appear and show cause for her failure. Hearing on the Show Cause order was held on May 2, 2006. [Doc. # 41.] During the hearing, petitioner advised the Court that she would represent herself and did not want court-appointed counsel. *Id.* The Court recommended that petitioner retain counsel or accept court-appointed counsel due to petitioner's lack of training and knowledge of the Federal Court Rules and Procedures, but Petitioner declined. *Id.* Although petitioner maintained that she did not desire appointed counsel, the undersigned ordered stand-by counsel appointed through the Federal Public Defender's Office. *Id.* Petitioner was specifically warned that she would not be allowed to retain counsel at the last minute and then use the last minute enrollment of counsel as an excuse to delay the trial.

Petitioner failed to comply with the conditions of her release by having a firearm in her

2

possession, and on May 15, 2006, after hearing, her pretrial release was revoked and she was ordered detained pending trial.

Finally, on May 18, 2006, Attorney Louis Scott enrolled as retained counsel for petitioner. [Doc. # 49.] The final pre-trial conference was held the same day. [Doc. # 68.] On June 9, 2006, petitioner filed a Motion and an Amended Notice to Continue Trial. [Doc. #'s 60 and 61.] The government opposed the motion [Doc. # 62] On June 12, 2006, District Judge Robert G. James signed an Order continuing the trial from June 19 to June 21, 2006. [Doc. # 67.] After a six-day trial, petitioner was convicted of all counts of the Indictment. [Doc. # 104; *see* Verdict Form, doc. # 111.]

On October 5, 2006, the Court denied a motion to continue sentencing filed by petitioner. [Doc. # 119.] The Court thereafter denied petitioner's objections to the pre-sentence report prepared by the United States Probation Office. [Doc. 124.] Petitioner was committed to the custody of the Bureau of Prisons for a term of 86 months as to Counts 1 through 18, and 60 months as to Counts 19 through 47, all counts to run concurrently. [Doc. # 121.] The petitioner was also ordered to pay restitution to the Louisiana Department of Social Services in the amount of $611,637.77, and $5,419.40 to the Louisiana Department of Education, Division of Nutrition Assistance, jointly and severally with co-defendant Katherine George. *Id.*

Petitioner thereafter appealed to the Fifth Circuit Court of Appeals. *See* Notice of Appeal [doc. # 126] filed October 27, 2006. On January 28, 2009, the Fifth Circuit issued as mandate a judgment affirming the conviction and sentence of petitioner. *United States of America v. McWilliams*, 308 Fed.Appx. 806 (5th Cir. 2009). Petitioner's motion timely followed.[1]

---

[1] *See Clay v. United States*, 537 U.S. 522, 532 (2003); *see also United States v. Gamble*, 208 F.3d 536 (5th Cir. 2000) (holding, *inter alia*, that where a defendant seeks direct appeal, "the conviction becomes final, and the one-year period begins to run, upon expiration of the time for seeking certiorari in the U.S. Supreme Court, even where...the appellant has not actually filed such a petition." *Id.*) Petitioner's judgment of conviction became final 90 days after the Fifth Circuit ruling on January 28, 2009. The one-year limitation period began to run when the time expired for filing a petition for certiorari to the Supreme Court, making petitioner's deadline April 28, 2010.

Petitioner alleges that her counsel at trial was "ineffective for accepting and enrolling in her complex, document intensive federal fraud case one month before trial–a trial at which counsel was obviously unprepared." [Doc. # 147.]

## LAW AND ANALYSIS

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a defendant "must clear a significantly higher hurdle" than the standard that would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982). When a defendant has been convicted and his conviction has been upheld on direct appeal, there is a presumption that the defendant's conviction is fair and final. *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). As a result, review under § 2255 is limited to four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255.

Collateral review is fundamentally different from and may not replace a direct appeal. *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584 (1982); *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*). Thus, even if the issues are constitutional or jurisdictional, the defendant may be procedurally barred from raising them collaterally. A defendant may not raise an "issue [constitutional or jurisdictional in nature] for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994) (*citing Shaid*, 937 F.2d at 232); *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995). Of course, issues raised and disposed of on direct appeal are not subject to further review under section 2255. *See Segler*, 37 F.3d at 1134.

Even if a defendant cannot establish "cause" and "prejudice," he may still be entitled to relief under § 2255 if there is a constitutional error which would result in a complete miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 495-6, 106 S.Ct. 2639, 2649 (1986); *Bousley v.*

*United States*, 523 U.S. 614, 620-2, 118 S.Ct. 1604, 1610-1611 (1998); *United States v. Ward*, 55 F.3d 412, 414 (5th Cir. 1995); *Shaid*, 937 F.2d at 232; *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992); *United States v. Hicks*, 945 F.2d 107, 108 (5th Cir. 1991). Such a miscarriage of justice would result if the error caused the defendant to be convicted of a crime of which he is innocent. *Shaid*, 937 F.2d at 232.

**I.      Ineffective Assistance of Counsel**

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2255. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996); *United States v. Gipson*, 985 F. 2d 212 (5th Cir. 1993); *United States v. Navejar*, 963 F. 2d 732, 735 (5th Cir. 1992). Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the defendant of his constitutional right to a fair trial or deprives the defendant of some other constitutional right. *Strickland v. Washington*, 466 U.S. 668, 686-7, 104 S.Ct. 2052, 2063-64 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him. *Id.*

If the defendant does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The prongs of the test also need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997). Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *See Strickland* at 689-690, 2065-66. The defendant must show that the performance of counsel fell "outside the wide range of professionally competent assistance."

*Strickland* at 690, 2066; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the defendant must demonstrate that the attorney's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *United States v. Saenz-Forero*, 27 F.3d 1016, 1019 (5th Cir. 1994); *Murray v. Maggio*, 736 F. 2d 279 (5th Cir. 1984). Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844 (1993); *see also, Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995). Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the defendant demonstrates that he would have received less jail time. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

## II.     Petitioner's Claim Regarding the Timing of Mr. Scott's Representation

Petitioner alleges that she failed to received the effective assistance of counsel because her trial attorney, Mr. Scott, "enrolled in her case a mere month before trial without conducting an adequate investigation and without being able to effectively prepare and present a coherent defense." (Mem. of Law in Supp. of Mot. [doc. # 147].) Petitioner further argues that Mr. Scott was unable to effectively prepare because he "enrolled in this complex, document intensive, multi-witness, white-collar federal prosecution just 33 days before trial!" *Id.*

Petitioner has overlooked a crucial element in Mr. Scott's late arrival to her case. Petitioner herself, less than two months away from trial, advised the undersigned that she was representing herself and did not want counsel, court appointed or retained. [Doc. # 41.] Despite the undersigned's recommendation that petitioner, at the very least, accept court-appointed counsel, petitioner again stated she did not want to be represented by the Federal Public Defender.[2] The petitioner's actions of refusing to procure her own attorney in a timely manner or

---

[2] The following exchange took place between Magistrate Judge Hayes and the petitioner at the May 2, 2006 hearing:
   Q: Do you understand that if you decide to represent yourself that we're not going to let

---

you change your mind at the last minute so that the trial in this matter, which is set for June the 19th, is delayed further?

A: Ok. I'm not requesting a delay, but I do have one question. Is there a limited amount of time that I have if I decide to obtain an attorney?

Q: Your deadline was last week, which is why we were doing that, because the trial is set for June the 19th.

A: Okay.

Q: And so in order to give a lawyer time to prepare a case, basically the law requires a defendant to be given–a trial to be set no later than, or no sooner than 30 days after arraignment. And that's to give somebody time to prepare. You're not going to find a lawyer who's going to be willing to represent you and come in less than a month before trial. So if you don't have somebody within the next couple of weeks, you're not going to find somebody.

A: Okay. So what you're saying to me, should I understand, when I walk out of this courtroom today, I no longer have the right to get an attorney?

Q: If you're telling us that you're going to represent yourself, then you are going to represent yourself. And the only way we would allow an attorney to enroll would be if that attorney was willing to try the case at the trial date that we have set now, June 19th–

A: Okay.

Q:–because we have given you a lot of time to find a lawyer. And it's not, it's just not fair to the system and to the fact that we've got a jury called, the fact that we've got a U.S. attorney who is waiting to try this case, to allow you to wait until the last minute and then come in and tell us that you found a lawyer and that you want a delay at trial. We're not going to do that.

A: Okay. You keep saying delay of the trial. I'm not requesting–

Q: I understand that.

A:–a delay or extra time. The only thing I'm trying to make sure that I understand is: I do have a right, if I come across an attorney that's willing to try my case for June 19th, I do have that right.

Q: You can have a lawyer enroll on your behalf, yes, you can.

A: Thank you.
* * *

Q: I feel like it is my duty to advise you that a trained lawyer would defend you far better than you could defend yourself, and I do think it's very unwise of you to try to represent yourself.
* * *

Q: Is there some reason you don't want court-appointed counsel?

A: Not at this time. And I do appreciate what you're offering me, and I do understand it. But just at this time I do not need counsel, not at this time.

Q: All right. So you're telling me that even being aware of the penalties that you might suffer if you're found guilty and in light of all the difficulties of representing yourself, that you still desire to represent yourself and you're giving up your right to be represented by a lawyer?

A: I'm not giving up the right to be represented by an attorney. Right now I don't have name or a person to submit to you, but right now I do not want a court-appointed attorney. And I don't doubt their ability; I don't doubt it at all. That's not it either. But I don't desire one at this time.

Q: All right. You either have to tell me that at this time you're representing yourself or I'm going to appoint a lawyer to represent you.

A: Right now I'm representing myself.

Q: All right. In doing that, you are waiving your right to an attorney. Do you understand

accept a court-appointed attorney is the sole cause of Mr. Scott's late arrival to the case. At the May 2, 2006 hearing, petitioner voiced her understanding of the severity of the charges; petitioner further stated that while she understood she could represent herself, she would not be entitled to any delay of trial should she obtain new counsel. *Id.* There is nothing to indicate that, on May 2, 2006, petitioner's waiver of counsel was not made knowingly and intelligently. *Carnley v. Cochran*, 369 U.S. 506, 513; *Moore v. Michigan*, 355 U.S. 155, 160-62; *Johnson v. Zerbst*, 304 U.S. 458, 468-69.

Contrary to her statements of understanding at the May 2, 2006 hearing, petitioner now argues that, as a result of obtaining counsel a month before her trial in 2006, she should have been afforded a delay of trial.

### A. Objective Standard of Reasonableness

Petitioner claims that Mr. Scott's performance as her attorney fell below the standard outlined in the Louisiana Rules of Professional Conduct (identical to ABA Model Rule of Professional Conduct 1.1).[3] Specifically, petitioner claims that "Mr. Scott did not exhibit or possess the requisite knowledge and skill to defend McWilliams effectively." (Mem. of Law in Supp. of Mot. [doc. # 147].) In support of her argument, she cites to the Trial Transcript, arguing

---

that?
    A: To a court-appointed attorney?
    Q: To being represented by counsel. You're waiving your right to a lawyer. If something should happen in the future and you would desire to hire a lawyer to represent you, that is a different matter. But at this time, for this record, unless you're telling me that you're waiving your right to a lawyer, I'm not going to allow you to do it.
    A: Okay. Well, I'm not making that statement. What I'm saying is: As of right now, I do not have an attorney; I do not wish to be given a court-appointed attorney.
    Q: And you can't afford a lawyer. Judging by your financial affidavit, you don't have the means to hire a lawyer.
    A: But I do understand that if I do get one, there will be no delay, no extra time, June 19th is the day.
    Q: That's the trial date.
    A: I do understand that.
(Hr'g. 4:16–9:9)

[3] "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonable necessary for the representation." LA. RULES OF PROF'L CONDUCT R. 1.1 (2010).

that the "Court's own words indicate that trial counsel was in over his head." *Id.*

However, the portion excerpted in petitioner's motion is taken out of context. Petitioner omits the further words of the Court that same day:

> Your client had the opportunity to retain counsel, had the opportunity to represent herself, didn't do anything while she was self-represented, has had the public defender available, an excellent attorney to represent her some time ago. She chose not to do that. This is–you know, you're implying this is the government's doing. I have not heard anything presented to me that I thought showed any type of failure on the part of the government to take care of its business. On the contrary, it all reflects a failure to the defendant and the defense counsel to take care of their business. (Tr. 221-22.)

The petitioner received repeated warnings that, should she proceed without an attorney, she would be disadvantaged. Further, petitioner was informed that if she did retain counsel in time for trial, that counsel would also be disadvantaged as a result of coming into the case so soon before trial. It is not Mr. Scott's failure as an attorney, but petitioner's failure to obtain counsel in a timely manner that led to her dissatisfaction with Mr. Scott's representation.

Petitioner further alleges that Mr. Scott's incompetence as an attorney is evidenced by the fact that he allowed petitioner to waive her Fifth Amendment privilege and testify at trial. [Doc. # 147.] This is hardly evidence of an incompetent attorney. Every defendant has a right to testify and cannot be denied that right. *United States v. Dunnigan*, 507 U.S. 87, 96 (1993). Allowing petitioner to testify certainly falls under the ambit of "trial strategy," *see Strickland* at 689-90. The fact that petitioner is unhappy with how she came across as a witness does not mean that Mr. Scott's decision to put her on the stand falls below the objective standard of reasonableness.

Even with his late arrival to the case, Mr. Scott still managed to zealously defend petitioner. Mr. Scott cross-examined every single government witness, and prompted re-direct by the government on many of the witnesses. (Tr. 1425-28.) In addition to herself, petitioner presented nine witnesses, as well as numerous exhibits in support of her theory of defense. (Tr. 1428-31.) Therefore, petitioner has failed to provide evidence sufficient to support a finding that she received ineffective assistance of counsel.

    **B.**    **Prejudice to Petitioner**

With regard to the second prong of *Strickland*, petitioner is silent as to what error or deficiency on Mr. Scott's part prejudiced her; petitioner only generally alleges lack of preparation, skill and knowledge by Mr. Scott. The jury ultimately chose to believe the case put forth by the government, for which petitioner cannot place blame on Mr. Scott. It was the decision of the petitioner, not her attorney, to repeatedly perjure herself while on the witness stand. *See* 308 Fed.Appx. at 809; Ruling on Objections to Pre-Sentence Report, pp. 9-12 [doc. # 124]. Petitioner has failed to establish any errors or deficiencies by her attorney that actually prejudiced her defense, resulting in an unreliable conviction.

## CONCLUSION

For the reasons stated above, it is recommended that petitioner's motion (Docs. # 147) under 28 U.S.C. § 2255 be **DENIED**. Under the provisions of 28 U.S.C. §636(b)(1)(c) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 13th day of September, 2010.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE